Julian Brew (SBN 150615)
jbrew@hechtpartners.com
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Phone: (212) 851-6821
  (310) 804-8065

Attorneys for Plaintiff-Relator,
RELATOR LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>   Plaintiff,<br><br>*ex rel.* **RELATOR LLC**, a California limited liability company,<br><br>   Relator,<br><br>   v.<br><br>**ILINK EMPLOYERS COMPANY**, a Delaware Corporation; **ILINK BUSINESS MANAGEMENT, INC.**, a California corporation; **ALVARO GABRIEL AYALA**, an individual; and Does 1-10,<br><br>   Defendants. | Case No.: 5:22-cv-01004-RGK-DTB<br><br>Assigned to the Honorable R. Gary Klausner, U.S.D.J.<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff RELATOR LLC (hereinafter referred to as "Plaintiff") complains of ILINK EMPLOYERS COMPANY, a Delaware Corporation ("Corp 1"), ILINK BUSINESS MANAGEMENT, INC., a California corporation ("Corp 2", together with Corp 1, hereafter collectively, the "Corporate Defendants"), ALVARO GABRIEL AYALA, an individual (the "Individual Defendant"); and DOES 1-10 (together with the Corporate Defendants and the Individual Defendant, collectively, the "Defendants"), and alleges as follows:

## I.   INTRODUCTION

1. This is a case about greed during a national health emergency. In this case, an individual, a businessman (through two separate corporate entities he owned and controlled) requested and received multiple PPP loans (from different lenders) in the amount of **$6,358,040.00** for the stated purpose of covering payroll costs for his workers, however the employees did not exist, and the money was used for prohibited purposes including the purchase of real estate and capital improvements.  As a temporary staffing firm, every penny of payroll was not paid by them but by the clients to whom they referred employees.

2. On their loan application with respect to Corp 1 Loan, Corp 1 reported 478 employees and requested $5,125,878.00 (meaning the average annual salary of each employee was $51,473.00).  However, Corp 1 did not have 478 employees.  This statement was false.   Its "employees" were temporary workers contracted to clients who paid their salaries or reimbursed Corp. 1 for them.

3. The Corp 1 Loan was approved on July 29, 2020. However, Corp 1 was not even registered to do business in California until July 22, 2020. In other words, Corp 1 registered to do business in California exactly **1 short week** before the Corp 1 Loan (a loan in excess of $5 million) was approved!  Corp. 1 was incorporated in Delaware in late 2019 and its designated place of business was California where it could not legally do business until July 2020.

4. On their loan application with respect to the Corp 2 Loan, Corp 2

- 1 -
FIRST AMENDED COMPLAINT

reported 33 employees and requested $1,232,162.00 (meaning the average annual salary of each employee was $179,224.00). However, Corp 2 did not have 33 employees earning such a salary. This statement was false.

5. Corp 2's application also violated the $100K Salary Expense Cap (as defined below) in that Corp 2 stated that 100% of loan proceeds would be used for salaries and the average annual salary for 33 employees on the requested loan amount is $179,224.00. Corp 2 requested this $1,232,162.00 amount for the calculation of the loan, knowingly violating the glaring government instruction not to exceed the $100,000 salary cap per person.

6. In the loan application, the application instructions explicitly state that for purposes of calculating "Average Monthly Payroll," costs over $100,000 on an annualized basis for each employee must be excluded (the "$100K Salary Expense Cap."). Defendants failed to exclude costs over $100,000, and therefore violated the $100K Salary Expense Cap.

7. Corp 1 and Corp 2 share common ownership and management, and in fact are different in name only. They also shared the same location, and Corp. 1 was not registered to do business until after the Corp. 2 loan.

8. The PPP prohibited more than one (1) loan per company in the first round of the program, therefore in order to circumvent that restriction Corp 1 obtained its loan from Harvest Small Business Finance, LLC and Corp 2 obtained its loan from a different lender, namely Bank Of America, National Association.

9. The money was borrowed for employees that did not exist and for high salaries that were not permitted. To the extent Defendants paid salaries, they were entirely funded by firms to whom they placed workers. Not a penny of the PPP loans were used or needed to pay them. It should have been returned. It has not been returned.

10. Shortly after receiving the loans, the Individual Defendant purchased multiple pieces of real estate including the location of Corp 2's present office space

at 9491 Pittsburgh Ave, Rancho Cucamonga, California 91730 on September 29, 2020 with PPP loan proceeds obtained from the government.

11. The Defendants made many material false statements to the government to obtain these large loans and did it for an impermissible purpose, and not to retain employees.

12. Defendants communicated in writing, deceptive statements, including without limitation, with respect to the necessity of the loan proceeds, the average salary reflected in tax returns, the calculation of the loan amount, the purpose of the loan, and the use of the proceeds.

13. Plaintiff-Relator, Relator LLC on behalf of the United States of America brings this action to recover treble damages, civil penalties, and costs under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover damages and other monetary relief under the common law and equitable theories of unjust enrichment and payment by mistake.

14. This action arises from numerous false statements and claims that the Defendants knowingly presented to the United States and the United States Small Business Administration ("SBA") and lenders acting on the SBA's behalf, in violation of the FCA and common law.

15. The Defendants unlawfully obtained millions of dollars of PPP Proceeds (as defined below), and failed to return or repay the money.

16. In summary, the Individual Defendant used the Corporate Defendants to obtain large PPP loans from the government. He deceptively completed the SBA loan applications by seeking money for employees of the Corporate Defendants when none actually existed. He used different banks for each loan in order to better conceal the deception. He then purchased real estate and spent money on capital improvements with the loan proceeds.

## II. THE PARTIES

17. Plaintiff Relator LLC, is a California limited liability company with its

- 3 -
FIRST AMENDED COMPLAINT

principal place of business in Los Angeles, California.

18. Defendant iLink Employers Company, is a Delaware corporation ("Corp 1") with its principal place of business at 8590 Utica Ave., Suite 100 Rancho Cucamonga, California 91730. Corp. 1 was formed as a Delaware corporation in late 2019 with its only place of business in California. However, it did not begin operations until July 2020, when it first registered to do business in California, and was able to do business.

19. Defendant iLink Business Management, Inc., is a California corporation ("Corp 2") with its principal place of business at 9491 Pittsburg Avenue, Rancho Cucamonga, California 91730. At the time Corp 2 applied for and received the Corp 2 Loan (as defined below) its stated principal place of business was 8590 Utica Ave., Suite 100, Rancho Cucamonga, California 91730. Corp. 1's subsequent loan was used to buy the Pittsburg Avenue property by Ayala and then leased to the Corporate Defendants.

20. During round 1 of the Paycheck Protection Program, Corp 2 applied for a PPP loan for **$1,232,162.00**. It was approved on May 1, 2020 by the SBA for an amount of **$1,232,162.00**. The loan was facilitated by Bank of America, National Association. Corp 2 received 100% of the approved amount. On its application for this loan, Corp 2 stated that it had 33 employees with an average salary of $179,224.00 per year. Said loan hereafter is referred to as the "Corp 2 Loan."

21. Defendant Alvara Gabriel Ayala ("Individual Defendant") is an individual and, at all relevant times herein, is and was the Chief Executive Officer, Chief Financial Officer, Secretary and sole Director of both Corporate Defendants.

22. During round 1 of the Paycheck Protection Program, Corp 1 applied for a PPP loan for **$5,125,878.00**. It was approved on July 29, 2020 by the SBA for an amount of **$5,125,878.00**. The loan was facilitated by Harvard Small Business Finance, LLC. Corp 1 received 100% of the approved amount. On its application for this loan, Corp 1 stated that it had 478 employees with an average salary of

- 4 -
FIRST AMENDED COMPLAINT

$51,473.00 per year. Said loan hereafter is referred to as the "Corp 1 Loan."

23. Corp. 1 was an affiliate of Corp. 2 under joint ownership and formed solely for the purpose of obtaining a second loan for the same business, in direct violation of PPP and SBA regulations and prohibitions on more than one first round loan under the PPP program.

24. When Corp. 1 applied for and received its loan, it falsely certified that it had been in operation by at least February 2020, as required to be eligible for the loan. It was not in operation until it registered to do business in July 2020, one week before applying. Corp. 1's loan was unlawfully obtained by fraud. Corp. 1 registered for business solely to get a loan for its affiliate's business to which neither company was eligible.

25. Corp. 1 also falsely certified that it had a legitimate concern over economic necessity and need for the loan to pay employees. This was false. Every penny Corp. 1 paid its employees was paid by the companies to which it sent employees as a staffing agency, and it only paid its employees from those funds and did not use the PPP loan for employee expenses.

### III.   THE CARES ACT AND PAYCHECK PROTECTION PROGRAM

26. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

27. The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

28. Section 1102 of the CARES Act temporarily permitted the SBA to

guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

29. On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

30. Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

31. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

32. Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

33. After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender

- 6 -
FIRST AMENDED COMPLAINT

submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | Yes | No |
|---|---|---|
| • The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | ☐ | ☐ |

SBA Form 2484.  Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

34. SBA Form 2483 provides the following certification, among others  "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (hereafter the "Understanding Certification").

35. SBA Form 2483 provides the following certification, among others "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (hereafter the "Eligibility Certification").

36. SBA Form 2483 provides the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (hereafter the "Use of Proceeds Certification").

37. SBA Form 2483 additionally provides the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (hereafter the "Economic Necessity Certification").  It also required the borrower to certify in writing that it has been operating in February 2020.

38. SBA Form 2483 additionally provides the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as

specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (hereafter the "Worker Retention and Payroll Certification").

39. SBA Form 2483 additionally provides the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program" (hereafter the "Single Loan Certification").

40. SBA Form 2483 additionally provides the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects.  I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (hereafter the "No False Statements Certification").

41. After the borrower submitted the PPP loan application, that application was then processed by a participating lender.  If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA.  Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

42. Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to

repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

43. Loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for, mortgage interest, rent, utilities or worker protection costs related to COVID19.

## IV. DEFENDANTS' FALSE STATEMENTS AND MISUSE OF PROCEEDS

44. Defendants applied for and received two PPP loans (Corp Loan 1 in the amount of $5,125,878.00 and Corp Loan 2 in the amount of $1,232,162.00) in the total amount of $6,358,040.00. In order to receive the loans, Defendants had to complete SBA Form 2483 entitled "Borrower Application Form." In doing so, Defendants made false statements with respect to the Eligibility Certification, the Use of Proceeds Certification, the Economic Necessity Certification, the Worker Retention and Payroll Certification, the No False Statements Certification and the Loan Forgiveness Certification.

45. Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation, the $100K Salary Expense Cap, and the rules regarding use of proceeds and the certifications made.

46. The proceeds of the PPP loans were not and could not have been used only for business-related purposes consistent with the Paycheck Protection Program Rule, because, among other things, use of proceeds are subject to the $100K Salary Expense Cap which was violated by the Defendants and proceeds were used to acquire real estate and make capital improvements, therefore when Defendants

made the Use of Proceeds Certification, the certification was false. They also did not need or use the proceeds for their claimed employees because their salaries were entirely paid by third parties who hired the employees and paid their salaries through these temporary staffing agency firms.

47. The proceeds of the PPP loan were not necessary to support the ongoing operations of Corporate Defendant. In fact, the proceeds of the PPP loans were used to enrich the Individual Defendant, acquire real estate and make capital improvements to real estate. The property was then leased to the Corporate Defendants. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

48. Corp. 1 also falsely certified that it had been in operation in February 2020, when it in fact went into operation in July 2020 for the sole purpose of getting a PPP loan. Yet, it falsely certified that it was operating in February 2020. It also stopped filing Statements of Information in 2021, shortly after receiving loan forgiveness, and therefore ceased operations. Corp. 1 was used solely to get a PPP loan it did not need and then promptly stopped operating. It has literally no online presence and has no record of doing business.

49. In fact, personnel at the location where Corp. 1 claimed to do business have stated that all of its employees moved to the new Pittsburgh Avenue location operated by Corp. 2. That office building was purchased for over $3 million using the Corp. 1 loan proceeds and was not used to pay any employees.

50. Corp 1 and Corp 2 are both wholly owned and controlled by Individual Defendant. Plaintiff is informed and believes and herein alleges that, aside from mere corporate formalities, they are not separate entities and that Defendants knowingly applied for PPP loans through separate lenders to circumvent the single PPP loan per entity rule. Therefore, when Defendants made the Single Loan Certification, the certification was false.

51. The proceeds of the PPP Loan were not used to retain workers and

- 11 -
FIRST AMENDED COMPLAINT

maintain payroll, and therefore when Defendants made the Worker Retention and Payroll Certification, the certification was false.

52. On their loan applications, Defendants made several key statements which were false. These key false statements by Defendant made it possible for them to get the loans.

53. By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

### V. THE FALSE CLAIMS ACT

54. Plaintiff alleges that, from at least May 1, 2020 through the time of the filing of this Complaint, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that the Corporate Defendants were eligible to receive such PPP loans. Moreover, Defendants' false claims caused on numerous occasions each of Harvest Small Business Finance, LLC and Bank of America, National Association to submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants' false statement concerning Defendants' general eligibility for the PPP loans, on which the SBA relied and paid to the lenders.

55. The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government.

*See* 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if

the omission renders those representations misleading. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

> (1) . . . any person who—
>
>> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>>
>> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>>
>> . . .
>>
>> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,
>
> is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

> (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—
>
>> (i) is presented to an officer, employee, or agent of the United States; or
>>
>> (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—
>>
>>> (I) provides or has provided any portion of the money or property requested or demanded; or

- 13 -

FIRST AMENDED COMPLAINT

> (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

56. A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). *See* 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

## VI. JURISDICTION AND VENUE

57. This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, *et seq.*, pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

58. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are found in the Central District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

59. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Corporate Defendants are all headquartered at the same office in San Bernardino County, all within the Central District of California. Moreover, the Individual Defendant resides and does business in San Bernardino County within the Central District of California. Furthermore, acts that form the basis of this Complaint occurred in the Central District of California.

60. Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or

administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this qui tam action.

## VII.  FIRST CAUSE OF ACTION
## FALSE OR FRAUDAULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A-B))

61. Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

62. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

63. By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

64. By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

65. Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 25, 2024            **HECHT PARTNERS LLP**

By: /s/ Julian Brew
    Julian Brew
    Attorneys for RELATOR LLC