UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:22-cv-01004-RGK-DTB | Date | March 20, 2026 |
|---|---|---|---|
| Title | *United States of America et al. v. Ilink Employers Company et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order Re: Defendants' Motion to Dismiss the Second Amended Complaint [87]**

## I.    INTRODUCTION

On June 17, 2022, American Taxpayers Fighting Fraud LLC ("Plaintiff") (previously known as Realtor LLC) filed a Complaint in this *qui tam* action on behalf of the United States against iLink Employers Company ("iLink Employers"), iLink Business Management, Inc. ("iLink Business"), and Alvaro Ayala ("Ayala") (collectively, "Defendants"), alleging that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A)–(B), by defrauding the COVID-era Paycheck Protection Program ("PPP"). (ECF No. 1.) On July 11, 2024, the Court granted Defendants' Motion to Dismiss the Complaint and dismissed the Complaint in its entirety with leave to amend. (ECF No. 59.) On July 25, 2024, Relator filed a First Amended Complaint ("FAC"). (ECF No. 60.) On September 9, 2024, the Court granted Defendants' Motion to Dismiss the FAC and dismissed the FAC without leave to amend, finding that Plaintiff failed to plead the required falsity element of the FCA as to any defendant. (ECF No. 70.)

On November 3, 2025, the Ninth Circuit reversed this Court's Order on Defendants' Motion to Dismiss the FAC, finding that "[Plaintiff] pleaded falsity with sufficient particularity" as to all Defendants. (Ninth Cir. Mem. at 4, ECF 74.) The Ninth Circuit then remanded the case for the Court "to consider the remaining elements of [Plaintiff's] FCA claim." (*Id.*) The Court then dismissed Plaintiff's FAC after finding that Plaintiff failed to adequately plead scienter, a necessary element for an FCA claim, but granted Plaintiff leave to amend. (ECF No. 77.) Plaintiff then filed a Second Amended Complaint ("SAC"). (ECF No. 80.) Presently before the Court is Defendants' Motion to Dismiss the SAC. (ECF No. 87.) For the following reasons, the Court **DENIES** Defendants' Motion to Dismiss the SAC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:22-cv-01004-RGK-DTB | Date | March 20, 2026 |
|---|---|---|---|
| Title | *United States of America et al. v. Ilink Employers Company et al.* | | |

## II.    FACTUAL BACKGROUND

Plaintiff alleges the following facts in the SAC:

The PPP was created by the United States Small Business Association ("SBA") during the COVID-19 pandemic to help small businesses obtain potentially forgivable, government-backed loans. Eligible borrowers received loans to pay wages and other permitted business expenses. So long as the borrower used the proceeds on qualifying expenses, the loan could be fully forgiven.

To obtain a PPP loan, a borrower needed to submit an application to an authorized third-party lender. On the application, the borrower reported its number of employees and its desired loan amount. The loan amount was based on the borrower's payroll costs, though the borrower excluded annual employee salaries above $100,000. Additionally, the borrower certified that (1) it was eligible to receive a PPP loan under the rules at the time the application was submitted; (2) it was in operation on February 15, 2020; (3) it employed no more than 500 employees; (4) economic uncertainty made the loan necessary to support ongoing operations, it would use the PPP loan funds to maintain existing payroll and to cover qualified expenses, and it would not seek forgiveness for more than 25% of the loan for non-payroll costs; and (5) the information provided in the application was true and accurate. If the application was approved, the lender funded the loan and obtained a guarantee from the SBA.

To obtain forgiveness of the PPP loan, a borrower had to submit a forgiveness application directly to the lender or the SBA. As part of the loan forgiveness application, a borrower needed to certify that the loan proceeds were used to pay business costs that are eligible for forgiveness and payroll costs equal to at least 60% of the forgiveness amount.

Ayala is the owner and CEO of iLink Employers and iLink Business, two corporations that applied for and received PPP loans and also obtained forgiveness for the loans. iLink Employers reported it had 478 employees on its PPP application and received a $5,127,878 loan. iLink Business reported it had 33 employees and received a $1,232,162 loan.

Defendants specifically made five false statements involving their PPP loans. First, Defendants falsely certified on the PPP loan forgiveness application that the loan amount was used for business-related purposes, or to retain workers and maintain payroll. This certification was false because third parties were contractually obligated to reimburse 100% of Defendants' temporary worker wages. Any "employees" they reported were temporary workers whose salaries were entirely paid by third parties, thus, Defendants did not need the PPP loan to maintain payroll.

Second, Defendants falsely certified that the PPP loan proceeds were to be used only for business-related purposes. Shortly after receiving the PPP loans, Ayala used the proceeds to purchase multiple pieces of real estate. In addition, for employees that made over $100,000 a year, PPP

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:22-cv-01004-RGK-DTB | Date | March 20, 2026 |
|---|---|---|---|
| Title | *United States of America et al. v. Ilink Employers Company et al.* | | |

instructions dictated that funding for payroll was capped at $100,000 for each employee. However, Ayala reported the full payrolls of iLink Business's 33 employees, which amounted to an average payroll of $179,224, in violation of the $100,000 salary cap.

Third, iLink Employers falsely stated that it was in operation in February 2020. However, in reality, it did not register to do business in California until July 22, 2020, which was one week before its loan was approved and after Ayala submitted the loan application.

Fourth, Defendants falsely certified that the PPP loan was economically necessary because they did not incur any payroll costs for temporary workers and they had access to sufficient liquidity through client reimbursements and fee premium markups.

Fifth, Defendants falsely certified in each of their loan forgiveness applications that the amount for which forgiveness was requested was used for business-related purposes and to retain workers and maintain payroll. As mentioned above, the funds were not used for payroll because third parties were obligated to reimburse Defendants 100% of any workers' wages.

As the controlling owner of iLink Employers and iLink Business, Ayala knew of Defendants' reimbursement-based compensation structure, contractual obligations, payroll records, economic necessity for loans, corporate structure, when iLink Employers and iLink Business were first in operation, and real estate holdings. Furthermore, Ayala signed employment service agreements that expressly acknowledged that iLinkEmployers and iLink Business "cannot incur costs of carrying the employees" who were leased to their Corporate Clients. (SAC ¶ 78.)

## III.   JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff need not provide "detailed factual allegations" but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The Court must also "construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The Court, however, is "not bound to accept as true a

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:22-cv-01004-RGK-DTB | | Date | March 20, 2026 |
|---|---|---|---|---|
| Title | *United States of America et al. v. Ilink Employers Company et al.* | | | |

legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Additionally, a plaintiff alleging a claim sounding in fraud must meet the more exacting pleading requirements of Rule 9(b), which require a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citing *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). Rule 9(b) allows a party to plead scienter generally. Fed. R. Civ. P. 9(b).

## IV.   DISCUSSION

The False Claims Act ("FCA") imposes civil liability on anyone who "knowingly presents" a "fraudulent claim for payment" to the federal government or who "knowingly makes" a "false record or statement" material to a fraudulent claim. 31 U.S.C. § 3729(a)(1)(A)–(B). A plaintiff must plead four essential elements under the FCA: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).

Private individuals, referred to as "relators," may bring suit on the government's behalf against those who violate the FCA. *Id.* § 3730(b)(1). The statute contains a "public disclosure bar," however, that precludes a relator from bringing an action based upon "substantially the same allegations or transactions" publicly disclosed through (i) a federal hearing, (ii) a federal report, or (iii) the news media. *Id.* § 3730(e)(4)(A).

The Court previously dismissed the FAC for failure to allege scienter. Regarding the SAC, Defendants argue that Plaintiff still fails to allege scienter and that the public disclosure bar prohibits the action. As Defendants do not contest any other element of Plaintiff's FCA claim, the Court addresses only whether Plaintiff adequately alleged scienter and then proceeds to address whether the public disclosure bar applies.

### A.   Scienter

Scienter, or knowledge, under the FCA requires Plaintiff to plead that Defendants either (1) had knowledge of the false information; (2) acted in deliberate ignorance of the truth or falsity of the information; or (3) acted in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A)(i)–(iii).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:22-cv-01004-RGK-DTB | Date | March 20, 2026 |
|---|---|---|---|
| Title | *United States of America et al. v. Ilink Employers Company et al.* | | |

The SAC adds two main allegations that demonstrate adequate scienter. As mentioned above, scienter only has to be alleged generally. *See* Fed. R. Civ. P. 9(b). First, and most persuasively, Plaintiff specifically alleges that under iLink Employers and iLink Business's written employee service agreements, which Ayala signed, Defendants acknowledged that Defendants "cannot incur costs of carrying the employees" leased to their corporate clients. (SAC ¶ 58.) This means that Defendants' corporate clients were contractually obligated to reimburse 100% of Defendants' workers' wages. In the PPP certification, Defendants specifically certified that PPP funds would be used for business-related purposes and to retain workers and maintain payroll, and that loan amounts were properly calculated based on qualifying payroll costs. Evident from the corporate contracts, which Ayala directly signed and which specifically state that Defendants do not incur any payroll costs for the employees, Defendants knew, or at least acted in reckless disregard of the truth, that the representations in the PPP loan were false, as Defendants did not in actuality need the money to maintain payroll.

Second, Plaintiff alleges that Ayala, as the controlling owner of iLink Employers and iLink Business, knew of Defendants' reimbursement-based compensation structure, contractual obligations, payroll records, economic necessity for loans, corporate structure, when iLink Employers and iLink Business were first in operation, and real estate holdings. It would follow therefore that Ayala and iLink Employers knew that they were falsely certifying that iLink Employers was "in operation" on February 15, 2020, when iLink Employers had no employees, payroll, online presence, or business activity prior to its PPP application in July 2020.

As controlling owner, Ayala had access to internal payroll data used for payroll calculations. PPP instructions capped payroll calculations at $100,000 for determining loan size. However, iLink Business's loan application reflected an average salary of $179,224 per employee. Again, a reasonable inference from this information demonstrates that Defendants knew they were violating the statutory cap or at least acted in reckless disregard of the statutory cap, which would be in violation of the PPP loan rules that they certified they were eligible under.

Taken together, Plaintiff adequately alleges scienter.

### B.      The Public Disclosure Bar

The public disclosure bar is triggered where (1) a disclosure occurred through a channel specified in the FCA statute, (2) the disclosure was "public," and (3) the action is "based upon" the allegations or transactions disclosed. *United States v. Allergan, Inc.*, 46 F.4th 991, 994 (9th Cir. 2022). If the bar is triggered, the court must dismiss the *qui tam* action unless the relator was an "original source" of the disclosure. *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1159 (9th Cir. 2024).

In the context of the public disclosure bar, an "allegation" is a "direct claim for fraud," while a "transaction" is a set of "facts from which fraud can be inferred." *Silbersher*, 89 F.4th at 1167 (citing

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:22-cv-01004-RGK-DTB | | Date | March 20, 2026 |
|---|---|---|---|---|
| Title | *United States of America et al. v. Ilink Employers Company et al.* | | | |

*United States ex re. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016)). Put differently, to be a transaction, the disclosure must include the "fundamental elements of fraud," which are "a misrepresented state of facts and a true state of facts." *Id.*

Here, Defendants argue again, as they have argued in the past in response to the Complaint and the FAC, that the transactions referred to in the SAC, which demonstrate fraud, have been disclosed publicly. The Court finds again that the public disclosure bar has not been triggered because the website, PandemicOversight.gov (the "Website"), does not disclose transactions—that is, it does not disclose facts in which fraud can be inferred. More specifically, the Website only discloses minimal information about each PPP loan, like the borrower's name, the lender's name, the loan amount, and the number of jobs reported. It does not disclose the true state of facts which forms the basis for misrepresentation. For example, it does not disclose the true number of jobs after considering that Defendants allegedly did not have employees to which they paid wages, the true date that iLink Employers was "in operation," or Ayala's actual use of loan proceeds. The Website's disclosures are "so innocuous" that there can be no disclosure of a fraudulent transaction in the first instance. *Mark ex rel. United States v. Shamir USA, Inc.*, 2022 WL 327475, at *2 (9th Cir. Feb. 3, 2022). Accordingly, the public disclosure bar is not triggered because the claim is not based on a publicly disclosed allegation or transaction.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss the SAC [87].

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                     JRE/sh