UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:22-cv-01004-RGK-DTB | Date | October 1, 2026 |
| Title | ***United States of America et al. v. iLink Employers Company et al.*** | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiff's Motion for Partial Summary Judgment [126] and Defendants' Motion for Summary Judgment or Partial Summary Judgment [129]**

## I. INTRODUCTION

On January 27, 2026, Plaintiff American Taxpayers Fighting Fraud LLC (previously known as Realtor LLC) filed the operative Second Amended Complaint ("SAC") in this *qui tam* action on behalf of the United States against Defendants Alvaro Ayala, iLink Business Management, Inc. ("iLink Business"), and iLink Employers Company ("iLink Employers"), alleging that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A)–(B), by defrauding the COVID-era Paycheck Protection Program ("PPP"). (ECF No. 80.) On March 20, 2026, the Court denied Defendants' Motion to Dismiss the SAC. (ECF No. 99.)

Presently before the Court are Plaintiff's Motion for Partial Summary Judgment (ECF No. 126) and Defendants' Motion for Summary Judgment or Partial Summary Judgment (ECF No. 129). For the following reasons, Plaintiff's Motion is **GRANTED IN PART** and Defendants' Motion is **GRANTED IN PART**.

## II. FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise noted:[1]

The United States Small Business Association ("SBA") created the PPP during the COVID-19 pandemic to help small business obtain potentially forgivable, government-backed loans. Eligible

[1] The parties make numerous objections to the evidence presented in support of and opposition to the Motions. To the extent the Court relies upon evidence to which the parties have objected, the objections are **OVERRULED**. To the extent the Court does not rely upon evidence to which the parties have objected, the objections are **DENIED** as **moot**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:22-cv-01004-RGK-DTB | Date | October 1, 2026 |
|---|---|---|---|
| Title | ***United States of America et al. v. iLink Employers Company et al.*** | | |

borrowers received loans to pay wages and other permitted business expenses. So long as the borrower used the proceeds on qualifying expenses, the loan could be fully forgiven.

To obtain a PPP loan, a borrower needed to submit an application to an authorized third-party lender. On the application, the borrower reported its number of employees and its desired loan amount. The loan amount was based on the borrower's payroll costs, though the borrower excluded annual employee salaries above $100,000. If the application was approved, the lender funded the loan and obtained a guarantee from the SBA.

Ayala is the sole owner, CEO, and President of iLink Employers and iLink Business (together, the "iLink Companies"), two temporary staffing firms who lease temporary workers to clients in exchange for payment. (Pl. Reply Statement of Uncontroverted Facts ("PRSUF"), ECF No. 142-37, at ¶¶ 1-5.) Although the iLink Companies are responsible for the temporary workers' wages per their employee agreements with the temporary workers, the clients of the iLink Companies pay the iLink Companies for the temporary workers' wages plus a premium for their services. (*Id.* at ¶ 5.) Ayala also began transferring iLink Business' workforce to iLink Employers around April 2020, and the iLink Companies at least sometimes entered into agreements with third parties jointly. (*Id.* at ¶¶ 10, 14; Ayala Tr., ECF No. 126-6, Ex. D, at 113:8-12.)

iLink Business and iLink Employers, through Ayala, each applied for and received PPP loans. (PRSUF at ¶¶ 33, 59.) On or around March 31, 2020, iLink Business applied for a $1,238,596 loan from Bank of America and reported that it had 33 employees and $495,438 in payroll costs. (ECF No. 126-3, Ex. A.) On July 27, 2020, iLink Employers applied for a $5,125,878 loan from Harvest Small Business Finance ("Harvest") and reported that it had 478 full-time employees and $2,050,351 in payroll costs. (ECF No. 126-11, Ex. I.) As required to obtain a PPP loan, the iLink Companies each certified and stated in their loan applications that they (1) employed no more than 500 employees; (2) requested the loan amounts based on their reported payroll costs under the PPP rules; (3) were not affiliated with any other business and that neither had nor would receive another PPP loan between February 15 and December 31, 2020; (4) were in operation on February 15, 2020; (5) needed the loans to support ongoing operations due to economic uncertainty; and (6) would use the loan proceeds to maintain existing payroll and other qualified expenses. (ECF Nos. 126-3, Ex. A, and 126-11, Ex. I.)

On or around May 1, 2020, iLink Business received its PPP loan for $1,232,162. (ECF No. 126-3, Ex. A.) On August 13, 2020, iLink Employers received its PPP loan for $5,125,878. (ECF No. 126-12, Ex. J.) On or around September 18, 2020, Ayala also personally financed a loan from Meadows Bank for $2,206,100 to purchase real estate, which Ayala leased to iLink Business for rent. (PRSUF at ¶¶ 7, 68.)

Defendants have since sought forgiveness on their PPP loans. (*Id.* at ¶¶ 43, 64.) On August 17, 2022, the SBA denied iLink Business' loan-forgiveness request. (ECF No. 126-3, Ex. A.) The SBA

specifically stated that iLink Business "together with its affiliates, exceeds the maximum allowable number of employees and the SBA small business size standards" and found that iLink Business "is part of a corporate group [that] has 511 employees, exceeding the 500-employee limitation." (*Id.*) Neither of the iLink Companies' PPP loans have been repaid. (PRSUF at ¶¶ 46, 65.)

## III. JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56(a), a court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

To prevail on a summary judgment motion, the movant must show that there are no genuine issues of material fact as to matters on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a showing "must establish beyond controversy every essential element" of the movant's claim or affirmative defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)–(b).

On issues where the moving party does not have the burden of proof at trial, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense, or show that the nonmoving party does not have enough evidence to prove an essential element. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *Celotex Corp. v Catrett*, 477 U.S. 317, 325 (1986). To defeat a summary judgment motion, the nonmoving party may not merely rely on his pleadings or on conclusory statements. *Id.* at 324. Nor may the nonmoving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the nonmoving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324. When evaluating evidence at the summary judgment stage, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157 (1970)).

## IV. DISCUSSION

The FCA imposes civil liability on anyone who "knowingly presents" a "fraudulent claim for payment" to the federal government or who "knowingly makes" a "false record or statement" material to a fraudulent claim. 31 U.S.C. § 3729(a)(1)(A)–(B). Under either theory, a plaintiff must show: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4)

the government to pay out money or forfeit moneys due." *U.S. ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017); *see U.S. ex rel. Quesenberry v. JMG Invests., Inc.*, 2026 WL 453469, at *6 (C.D. Cal. Jan. 14, 2026) (same elements for both 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B)).

Private individuals, referred to as "relators," may bring suit on the government's behalf against those who violate the FCA. 31 U.S.C. § 3730(b)(1). The statute contains a "public disclosure bar," however, that precludes a relator from bringing an action based upon "substantially the same allegations or transactions" publicly disclosed through (i) a federal hearing, (ii) a federal report, or (iii) the news media. *Id.* § 3730(e)(4)(A)(i)–(iii).

Plaintiff's Motion seeks partial summary judgment as to three elements of its FCA claims: falsity (element one), materiality (element three), and payment (element four).[2] Defendants oppose as to falsity and materiality, but not payment.

Defendants' Motion seeks, and Plaintiff opposes, summary judgment on the grounds that the public disclosure bar precludes Plaintiff's claims. Alternatively, Defendants seek summary judgment or partial summary judgment as to falsity (element one) and scienter (element two).

The Court first considers whether the public disclosure bar applies. Then the Court decides whether there is a genuine dispute of fact as to each element of Plaintiff's FCA claims.

### A. <u>Public Disclosure Bar</u>

The public disclosure bar precludes an FCA claim if: "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was public; and (3) the realtor's action is substantially the same as the allegation or transaction publicly disclosed." *U.S. ex rel. Realtor, LLC v. Erskine*, 182 F.4th 785, 792 (9th Cir. 2026). The statute specifies that the disclosure must occur through one of the three channels: (i) a federal hearing; (ii) a federal report; or (iii) the news media. *See* 31 U.S.C. § 3730(e)(4)(A)(i)–(iii). The public disclosure bar is an affirmative defense to which Defendants bear the burden of proof as to each element. *U.S. ex rel. Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1107 n.2 (9th Cir. 2017).

Defendants argue that the public disclosure bar precludes Plaintiff's claims because Plaintiff constructed its fraud allegations by relying solely on public sources—namely, the SBA's public database found on PandemicOversight.gov, other public websites (*e.g.*, Wikipedia and the Secretary of State websites), and state-court records. (*See* Hakimi Tr., ECF No. 129-11.1, at 68:10-69:23.) Plaintiff rebuts that Defendants fail to identify which statutory channels it seeks to characterize Plaintiff's sources, and

[2] The SAC alleges two counts under the FCA, 31 U.S.C. § 3729(a)(1)(A)-(B), which share the same elements of proof. *See Quesenberry*, 2026 WL 453469 at *6.

that Defendants fail to show if and how those sources allege or lead to an inference of fraud that is specific to Defendants.

The Court agrees with Plaintiff that, besides the SBA database, Defendants fail to identify whether Plaintiff's sources fall into one of the statutory channels: a federal hearing, federal report, or the news media. While Defendants posit that the SBA database is a "federal report," Defendants contend that Plaintiff's other sources need not fall into one of the statutory channels to trigger the bar. Defendants, however, thus tacitly concede that these other sources in fact fall outside the bar, as they do not qualify as being made through one of the three channels. Moreover, Defendants' cited authorities do not support the proposition that sources falling outside of the statutory channels may still trigger the bar. *See U.S. v. Allergan, Inc.*, 46 F.4th 991, 999 (9th Cir. 2022) (plaintiff based FCA claim on a public patent prosecution, which is a federal hearing); *U.S. ex rel Calilung v. Ormat Indus., Ltd.*, 2015 WL 1321029, at *15 (D. Nev. Mar. 24, 2015) (plaintiffs based FCA claim on SEC filings, which are federal reports). It therefore appears that the disclosures that were made outside of the three recognized channels would not trigger the bar. Only the SBA database—accepting as true that it counts as a "federal report"—can trigger the bar. But even so, this Court has previously determined that the SBA database is "so innocuous" that there can be no disclosure of a fraudulent transaction. (ECF No. 99 at 6 (quoting *Mark ex rel. U.S. v. Shamir USA, Inc.*, 2022 WL 327475, at *2 (9th Cir. Feb. 3, 2022)).) Defendants have not produced additional evidence that the SBA database contains information leading to an inference of fraud.

Accordingly, the Court finds that the public disclosure bar does not apply. Defendants' Motion as to the public disclosure bar is **DENIED**.

### B. False Claims Act

As mentioned, there are four elements of an FCA claim: (1) falsity; (2) scienter; (3) materiality; and (4) payment. *See Campie*, 862 F.3d at 899. Plaintiff argues that it is entitled to partial summary judgment as to falsity, materiality, and payment. Defendant argues that it is entitled to summary judgment or partial summary judgment as to falsity and scienter. The Court addresses each element in turn.

#### 1. *Falsity*

An FCA claim requires showing "a false statement or fraudulent course of conduct." *Campie*, 862 F.3d at 899. When addressing FCA claims, "court decide whether a claim is a false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law," the meaning of which is "subject to judicial interpretation." *U.S. v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008). While a defendant's reasonable misunderstanding of governing language may be relevant to the element of scienter, it does not preclude a finding of falsity. *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463

(9th Cir. 1999); *U.S. GNGH2 Inc. v. XLD Century LLC*, 2024 WL 3455262, at *4 (C.D. Cal. May 8, 2024).

In its Motion for Partial Summary Judgment, Plaintiff argues that Defendants' PPP loan applications included false certifications concerning (1) the iLink Companies' number of employees; (2) iLink Business' payroll costs; (3) the iLink Companies' affiliation with one another; (4) iLink Employers' date of operation; and (5) Defendants' economic necessity for the PPP loans.[3] Defendants oppose and argue in their own Motion that the undisputed facts support granting summary judgment in Defendants' favor as to the same certifications. Defendants additionally argue that they truthfully certified that they would use the loan proceeds for payroll and other qualified expenses, which Plaintiff opposes but does not itself seek summary judgment. The Court addresses each alleged falsity in turn.

a. *iLink Companies' Number of Employees*

Plaintiff argues that Defendants wrongly claimed that they employed temporary workers whose wages were ultimately reimbursed by Defendants' clients and thus could only be counted as employees of Defendants' clients. Defendants argue that the temporary workers were their own and not their clients'. The Court finds that Defendants did not falsely state their number of employees by counting their temporary workers leased to their clients.

Plaintiff relies on the SBA's regulations and guidance providing that loan applicants must count "all individuals employed on a full-time, part-time, or other basis," including "employees obtained from a temporary employee agency." 15 U.S.C. § 636(a)(36)(D)(v); 13 C.F.R. § 121.106. Plaintiff gathers from the SBA's regulations that, because Defendants' clients must count temporary workers in their own applications, Defendants themselves are prohibited from counting the same temporary workers. But Plaintiff's authority only establishes what Defendants' clients must report—not what Defendants may report. As Defendants point out, Plaintiff fails to cite authority expressly prohibiting Defendants, or any other temporary staffing agency, from counting temporary workers who are in fact Defendants' employees.

Defendants, on the other hand, have produced their client service agreements stating that the temporary workers were "employees of iLink and only of iLink" and providing that Defendants remained responsible for wages, firing authority, and other employment-related matters. Moreover, Defendants have produced tax forms and payrolls reflecting that they employed the temporary workers at issue. The fact that Defendants' clients paid Defendants for their services of providing temporary workers, which includes the temporary workers' wages plus a premium, only explains Defendants'

[3] Plaintiff also claims that Defendants falsely certified that their statements were "true and accurate." The Court need not separately address this certification's alleged falsity because it is predicated on the other certifications. If one of the other certifications was false, then it follows that the "true and accurate" certification was also false.

business model but does not controvert Defendants' evidence that Defendants ultimately employed the temporary workers.

Plaintiff also contends that Defendants contradict its reported number of employees through other submissions and tax filings: iLink Business claimed 33 employees on its loan application but Ayala testified it had at least 1,300 part-time and full-time employees in 2019 (*see* Ayala Tr. at 38:6-15.) and later claimed 433 employees in iLink Business' loan-forgiveness request (*see* ECF No. 126-3, Ex. A); and iLink Employers claimed 478 full-time employees on its loan application but its tax filings roughly two months prior had reported 1,982 employees (ECF No. 126-38, Ex. AK) and then 47 employees the quarter the loan disbursed (ECF No. 139-17, Ex. O). But the discrepancy between *different documents* submitted at *different times* does not show that the Defendants falsely reported their employee count *on the loan applications* and *at the time of their submissions*. Plaintiff has not produced other evidence that genuinely disputes Defendants' evidence.

Accordingly, the Court finds Defendants did not falsely state their number of employees.

b. *iLink Business' Payroll Costs*

The PPP permitted a borrower to request 2.5 times the borrower's average total monthly payroll costs, which includes salaries and wages, health care costs, retirement benefit costs, state and local taxes, and other costs. *See* 15 U.S.C. § 636(a)(36). The PPP, however, excludes payroll costs exceeding $100,000 per employee on an annualized basis. *Id.*

Plaintiff argues that iLink Business falsely reported its payroll costs and could not have truthfully requested its roughly $1.2 million loan based on the reported 33 employees.[4] Defendants explain that its payroll costs included non-cash benefits (*e.g.*, health insurance and retirement contributions), which Plaintiff's calculation ignores. But, as Plaintiff points out, iLink Business' application reported $0 for "employee benefits including health care and retirement." (*See* ECF No. 139-49, Ex. AV.) Defendants have not produced evidence genuinely disputing Plaintiff's evidence that the maximum loan amount iLink Business could have sought was $687,500, not the $1.2 million loan it requested.

Thus, the Court finds that iLink Business falsely reported its payroll costs for its reported 33 employees.

c. *iLink Companies' Affiliation*

The PPP permitted a borrower and its affiliates to receive one loan between February 15 and December 31, 2020. *See* 85 Fed. Reg. 20811, 20812. Plaintiff argues that Defendants falsely certified

[4] Plaintiff argues the maximum loan amount iLink Business could have sought was $687,500 (2.5 x (33 employees x $100,000 / 12 months)).

that the iLink Companies were not affiliated and they would receive only one PPP loan between February 15 and December 31, 2020. Plaintiff points to the SBA's subsequent denial of iLink Business' loan forgiveness request, which determined that iLink Business was ineligible to receive its loan because iLink Business and "its affiliates" (*i.e.*, iLink Employers) exceeded the employee cap. Defendants argue that iLink Business and iLink Employers were independent entities that had separate IRS ID numbers and were entitled to receive separate PPP loans. The Court agrees with Plaintiff.

The SBA regulations provide that affiliation exists where "a third party or parties control or has the power to control both [entities]," considering the "ownership, management, previous relationships with or ties to another concern, and contractual relationships." 13 C.F.R. § 121.103(a). Here, the undisputed evidence shows that Ayala solely owned and controlled the iLink Companies as their president and CEO (among other titles), moved temporary workers between the iLink Companies, and entered the iLink Companies jointly into agreements with third parties. *See Quesenberry*, 2026 WL 453469 at *6 (defendant falsely certified that he would not receive another PPP loan when applying for subsequent loan with different lender). The fact that the iLink Companies had separate IRS ID numbers does not raise a genuine dispute as to Ayala's ownership and control over them as affiliated entities. Defendants also do not genuinely dispute that, as affiliated entities, the iLink Companies received two PPP loans despite their respective certifications to the contrary.

Accordingly, the Court finds that Defendants falsely certified that the iLink Companies were not affiliated and had not and would not receive another PPP loan.

d. *iLink Employers' In-Operation Date*

Plaintiff argues that iLink Employers falsely certified that it was "in operation on February 15, 2020" based on evidence that it did not obtain its California business registration until July 2020 and an email from Defendants' counsel to Bank of America in March 2023 stating that iLink Employers "had not yet been in operation at the time iLink Business" applied for its loan in March 2020. Defendants point out that iLink Employers was incorporated in Delaware in October 2019, and its payroll and tax returns shows it paid roughly $5.7 million in wages from October 2019 to December 2019.

Plaintiff cites no authority requiring businesses to obtain a California registration to be considered "in operation" under the PPP, and the Court declines to construe the term so narrowly. *See Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 833 (9th Cir. 1996) ("Where a statutory term is not defined in the statute, it is appropriate to accord the term its ordinary meaning.") (internal quotations omitted). But the email from Defendants' counsel appears to admit that iLink Employers was not in operation on or around March 2020. iLink Employers' payroll and tax returns in 2019, however, controverts that email by showing that iLink Employers was at least paying employees—and thus plausibly "in operation"—before the February 15, 2020 cutoff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:22-cv-01004-RGK-DTB | Date | October 1, 2026 |
| Title | ***United States of America et al. v. iLink Employers Company et al.*** | | |

The Court finds that there is a genuine dispute of fact as to whether iLink Employers falsely certified that it was "in operation on February 15, 2020."

e. *Economic Necessity*

Plaintiff argues that Defendants falsely certified the economic uncertainty of the COVID-19 pandemic made their loans necessary to support the ongoing operations, where Defendants' clients reimbursed the iLink Companies for their payroll costs and Ayala obtained another $2.2 million loan during iLink Employers' application period to purchase real estate. Defendants argue that, at the time of their certifications, Defendants continued to employ their internal staff, incurred additional operating costs related to COVID-19, and remained exposed to wages and payroll liabilities regardless of their clients' reimbursement. Defendants further argue that Ayala's subsequent financing to personally purchase real estate does not show that his companies did not face economic uncertainty. The Court agrees with Defendants.

As discussed with respect to the iLink Companies' claim over temporary employees, the iLink Companies remained responsible for their employees' payroll. And as Defendants point out, a business facing economic uncertainty during COVID-19 may still need multiple sources of financing and real estate to operate.

Accordingly, the Court finds that Defendants did not falsely certify that their loans were based on economic necessity.

f. *Use of Proceeds*

Defendants' Motion also argues that Ayala's personal finance of a $2.2 million loan from Meadows Bank to purchase real estate does not establish that they falsely certified their intent to use the PPP loan proceeds from Bank of America and Harvest for payroll and other qualified expenses. Plaintiff's Motion does not seek partial summary judgment on this point, but Plaintiff rebuts that Ayala purchased the real estate roughly one month after receiving iLink Employers' loan and then leased the building to iLink Business for rent. The Court agrees with Defendants that Plaintiff has failed to trace the loan proceeds to Ayala's personal financing for the real estate or produce any other evidence showing that Defendants' certification was false at the time of the applications.

Accordingly, the Court finds that Defendants did not falsely certify that the proceeds would be used for payroll costs and other qualified expenses.

***

Plaintiff's Motion as to falsity is **GRANTED**, and Defendants' Motion is **DENIED**, for Defendants' certifications and statements regarding iLink Business' payroll costs and the iLink Companies' affiliation.

Defendants' Motion as to falsity is **GRANTED**, and Plaintiff's Motion is **DENIED**, for Defendants' certifications and statements regarding the iLink Companies' number of employees, economic necessity, and use of proceeds.

Plaintiff's and Defendants' Motions as to falsity are **DENIED** for Defendants' certifications and statements regarding iLink Employers' in-operation date.

The surviving certifications and statements left for trial concern: (1) iLink Business' payroll costs; (2) the iLink Companies' affiliation with one another; and (3) iLink Employers' in-operation date. The Court next considers whether Defendants made these certifications and statements with the requisite scienter.

2. <u>*Scienter*</u>

Scienter, or knowledge, under the FCA requires showing that Defendants either (i) had knowledge of the false information; (ii) acted in deliberate ignorance of the truth or falsity of the information; or (iii) acted in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A)(i)–(iii).

Defendants argue that they relied on third-party professionals and lenders to navigate the PPP regulations and SBA guidance when submitting their applications, thereby negating scienter. Plaintiff argues that Defendants cannot hide behind lenders because the SBA regulations provide that lenders could rely on the borrower's own certifications and documents. *See* 85 Fed. Reg. 20811, 20812, 20816.

The Court finds that there is a genuine dispute of fact as to Defendants' scienter regarding the remaining certifications and statements at issue. Defendants' evidence does not show that third parties specifically advised Ayala on what to report for iLink Business' payroll costs. For instance, much of Defendants' evidence appears to be emails regarding the status of Defendants' loan applications and Defendants' request for loan forgiveness occurring approximately one year after Defendants applied for their loans. Moreover, a reasonable juror can find that Defendants knowingly falsified iLink Business' payroll costs since iLink Business reported 33 employees and Bank of America provided instructions on how to calculate payroll costs under the PPP salary cap. A reasonable juror also can find that, because Ayala owned and controlled both of the iLink Companies, Defendants knew that the iLink Companies were affiliated and when iLink Employers was in operation.

Accordingly, Defendants' Motion as to scienter is **DENIED**.

3. *Materiality*

A statement is "material" under the FCA if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "Whether a provision is labeled as a condition of payment is relevant to but not dispositive of the material inquiry." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 190 (2016). Moreover, "evidence that . . . the [g]overnment consistently refuses to pay claims . . . based on noncompliance" favors finding materiality, whereas evidence that the government will pay claims despite noncompliance is "very strong evidence that those requirements are not material." *Id.* at 194-95. Ultimately, materiality "looks to the effect on the likely or actual behavior" of the government. *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1019 (9th Cir. 2018) (quoting *Escobar*, 579 U.S. at 193).

Plaintiff argues in its Motion that the certifications were material because the iLink Companies would have been ineligible to receive the loans had Defendants answered the certifications truthfully. Plaintiff points to the fact that the loan application required the certifications and that the SBA determined iLink Business' ineligibility when denying iLink Business' loan-forgiveness request. In their opposition, Defendants argue that the loan applications merely asked for information but do not establish that the government would have denied the applications had Defendants answered differently. Defendants also argue that SBA's denial of iLink Business' request for loan forgiveness does not prove materiality as to the initial disbursement and instead shows that the SBA has chosen to continue servicing the loan.

There is no genuine dispute that the certifications discussed above were material to the SBA's decision to approve the loans. The SBA conditioned the loans on the certifications. *See, e.g.*, 85 Fed. Reg. 20811, 20812-13 (Apr. 15, 2020) (providing for one-loan-per-borrower rule and requiring, among other things, that eligible borrowers must have 500 or fewer employees); 15 U.S.C. § 636(a)(36)(T) ("A business or organization that was not in operation on February 15, 2020 shall not be eligible for a [PPP] loan under this paragraph."). Indeed, the SBA's denial of iLink Business' request for loan forgiveness further evidences the government's "likely or actual behavior" that it would have denied Defendants' loan applications based on statutory ineligibility had Defendants' reported their aggregate employee counts between the two companies.[5] *Rose*, 909 F.3d at 1019; *see also Quesenberry*, 2026 WL 453469 at *7 (finding no genuine dispute as to materiality because defendants would have been ineligible for a subsequent PPP loan had defendants truthfully certified that it "will not" receive another PPP loan); *c.f. U.S. v. ManPow, LLC*, 2024 WL 305699, at *13 (C.D. Cal. Jan. 3, 2024) (defendant's omission of

[5] Defendants also contend that the SBA's denial of iLink Business' request for loan forgiveness has no bearing on iLink Employers, whose request for loan forgiveness remains pending. The Court disagrees. The SBA determined that iLink Business was ineligible for the PPP loan because its employee count exceeded the statutory cap *when aggregated with iLink Employers*. It follows that iLink Employers' employee count also exceeded the statutory cap and would render iLink Employers similarly ineligible.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:22-cv-01004-RGK-DTB | Date | October 1, 2026 |
| Title | ***United States of America et al. v. iLink Employers Company et al.*** | | |

affiliate entities was immaterial because their aggregated employee-count remained below statutory cap and would not have resulted in ineligibility). Defendants do not genuinely dispute Plaintiff's evidence.

Accordingly, Plaintiff's Motion as to the element of materiality is **GRANTED**.

4. Payment

Lastly, under the FCA, Defendant must have caused "the government to pay out money or forfeit moneys due," which requires showing that Defendant submitted a "claim"—that is, a "request or demand . . . for money or property" made to a "contractor, grantee, or other recipient" that receives any portion of the requested money or property from the government. *See Campie*, 862 F.3d at 899; *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1117 (9th Cir. 2006); 31 U.S.C. § 3729(b)(2). Plaintiff argues that there is no genuine dispute that Defendants made a claim establishing the payment element. Defendants do not oppose.

Failure to file an opposition cannot be the sole basis for granting a summary judgment motion, and Plaintiff must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial. *See Heinemann v. Satterberg*, 731 F.3d 914, 916-17 (9th Cir. 2013); *see also* L.R. 7-12. Here, there is uncontroverted evidence that Defendants submitted applications for the PPP loans, which were requests to lenders for money that was guaranteed by the SBA, a government agency. Accordingly, Defendants' applications count as "claims." *See Quesenberry*, 2026 WL 453469 at *7 (no genuine dispute that a PPP loan application is a "claim" satisfying the fourth element of an FCA claim).

Plaintiff's Motion as to the element of payment is **GRANTED.**

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is **GRANTED IN PART**, and Defendants' Motion for Summary Judgment or Partial Summary Judgment is **GRANTED IN PART**.

The following triable issues remain:

- Whether Defendants falsely certified that iLink Employers was in operation on February 15, 2020;
- Whether Defendants' false certifications were made with scienter;
- Damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:22-cv-01004-RGK-DTB | Date | October 1, 2026 |
| Title | ***United States of America et al. v. iLink Employers Company et al.*** | | |

**IT IS SO ORDERED.**

___ : ___

Initials of Preparer JRE